**Wacks & Hartmann, LLC**
Attorneys at Law
55 Madison Avenue, Suite 320A
Morristown, NJ 07960-7397
(973) 644-0770
Attorney of record: Philip Stern
Attorneys for Plaintiffs, Mark A. Apostolou,
Richard S. Crews, Robert H. Gardner, Sr.,
Arnoud C. Moes, Jeri B. Schwebs, Bradley
M. Sondrol, John M. Wade, Chandelle L.
Whitney, Don Wideman, Sygmund N.
Williams, and all others similarly situated.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MARK A. APOSTOLOU, an
individual; et al.,
            Plaintiffs,

        vs.

MANN BRACKEN, LLC, a Georgia
Limited Liability Company; et al.

        Defendants.

Civil Action No.
2:07-cv-04950-PGS-ES

# PLAINTIFFS' BRIEF OPPOSING
# DEFENDANT'S MOTION
# TO DISMISS OR TRANSFER VENUE
## MOTION DATE: JUNE 2, 2008

pds1300

## Table of Contents

**Table of Authorities** ........................................................................ 3

**Introductory Statement** .................................................................. 8

**Procedural History** ........................................................................ 10

**Statement of the Case** ................................................................... 11

    **A.**    **The Claims.** ....................................................................... 12

        *1.*   *No-meaningful-attorney-review letters.* ........................... 12

        *2.*   *No-disclosures letters.* ...................................................... 14

        *3.*   *Telephone Messages.* ......................................................... 15

    **B.**    **A Convenient Location.** .................................................. 17

**Legal Arguments** ........................................................................... 29

    Plaintiff's Choice of Venue "Should Rarely Be Disturbed." Defendant Has
Failed to Make the Required Strong Showing that Venue is Improper or
that Venue Should be Changed for the Convenience of the Parties and
Witnesses, or in the Interests of Justice. Therefore, Defendant's Motion
Should be Denied. ...................................................................... 29

**Conclusion** .................................................................................... 46

pds1300

# Table of Authorities

## Cases

*800-Flowers Inc. v. Intercontinental Flowers*,
860 F. Supp 128 (S.D.N.Y. 1994) ............................................................... 38

*Avila v. Rubin*,
84 F.3d 222 (7th Cir. 1996) .................................................................. 10, 11

*Bane v. Netlink, Inc.*,
925 F.2d 637 (3rd Cir. 1991) ..................................................................... 33

*Bates v. C & S Adjusters, Inc.*,
980 F.2d 865 (2d Cir. 1992) ...................................................................... 37

*Belin v. Litton Loan Servicing*,
2006 U.S. Dist. LEXIS 47953 (M.D. Fla. 2006) ...................................... 13

*Biggs v. Credit Collections, Inc.*,
Case No. CIV-07-0053-F (W.D.Okla. November 15, 2007) .................... 14

*Bitah v. Global Collection Servs.*,
968 F.Supp. 618 (D.N.M. 1997) ............................................................... 11

*Clomon v. Jackson*,
988 F.2d 1314 (2d Cir. 1993) .................................................................... 10

*Costa v. Nat'l Action Fin. Servs.*,
2007 U.S. Dist. LEXIS 93230 (E.D. Cal. 2007) ........................... 13, 14, 15

*Crossley v. Lieberman*,
868 F.2d 566 (3d Cir. 1989) ...................................................................... 10

*Delgett v. Wolpoff & Abramson, L.L.P.*,
2007 U.S. Dist. LEXIS 86064 (E.D.Pa. November 21, 2007) .................. 29

*Denver & R.G.W.R. Co. v. Brotherhood of R.R. Trainmen*,
387 U.S. 556 (1967) .................................................................................. 29

<u>Dupuy v. Waltman, Wienberg & Reis Co.</u>,
  442 F. Supp. 2d 822 (N.D. Cal. 2006) ...................................................... 21

*Editorial Musical Latino Americana v. Mar,*
  829 F. Supp. 62 (S.D.N.Y. 1993) ............................................................ 38

*Foti v. NCO Financial Systems*,
  424 F. Supp. 2d 643 (S.D.N.Y. 2006)...................................................... 13

*Glover v. Client Servs.*,
  2007 U.S. Dist. LEXIS 73604, *14-16 (W.D. Mich. 2007) .................... 15

*Greco v. Trauner, Cohen & Thomas, L.L.P.*,
  412 F.3d 360 (2d Cir. 2005).................................................................... 21

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947) ................................................................................ 36

*Hardaway Constructors, Inc. v. Conesco Ind., Ltd.*,
  583 F. Supp. 617 (D.N.J. 1983) .............................................................. 37

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
  466 U.S. 408 (1984) ...................................................................... 17, 32, 33

*Hosseinzadeh v. M.R.S. Associates*,
  387 F. Supp. 2d 1104 (C.D. Cal. 2005)........................................ 13, 14, 15

*Job Haines Home for the Aged v. Young*,
  936 F. Supp 223 (D.N.J. 1996) ........................................................ 36, 42

*Jumara v. State Farm*,
  55 F3d 873 (3d Cir. 1995)............................................................ 28, 35, 36

*Kingsepp v. Wesleyan University*,
  763 F.Supp. 22 (S.D.N.Y. 1991)............................................................. 29

*Leyse v. Corporate Collection Services*,
  2006 U.S. Dist. LEXIS 67719 (S.D.N.Y. 2006) ...................................... 14

*Lony v. E.I. Du Pont de Nemours & Co.*,

pds1300

935 F.2d 604 (3d Cir. 1991) ..................................................................... 28

*Masciarelli v. Richard J. Boudreau & Assocs., LLC*,
2007 U.S. Dist. LEXIS 95468 (D. Mass. 2007) ........................................ 15

*Myers v. American Dental Ass'n*,
695 F.2d 716 (3d Cir. 1982) ...................................................................... 28

*Nielsen v. Dickerson*,
307 F.3d 623 (7th Cir. 2002) ..................................................................... 10

*Perkins v. Beguet Consolidated Mining Co.*,
342 U.S. 437 (1952) .................................................................................. 17

*Shutte v. Armco Steel*,
431 F2d 22 (3d Cir. 1970) *cert. denied* 401 U.S. 910 (1971) ................... 36

*Stinson v. Asset Acceptance, LLC*,
2006 U.S. Dist. LEXIS 42266 (E.D. Va. 2006) ........................................ 14

*Swanson v. Southern Oregon Credit Service, Inc.*,
869 F.2d 1222 (9th Cir. 1988) ................................................................... 21

*Taylor v. Perrin, Landry, DeLaunay & Durand*,
103 F.3d 1232 (5th Cir. 1997) ................................................................... 11

*Tolentino v. Friedman*,
46 F.3d 645 (7th Cir. 1995) ....................................................................... 14

*United States v. Central Adjustment Bureau, Inc.*,
667 F.Supp. 370 (N.D.Tex. 1986) ............................................................. 11

*United States v. Miss.*,
380 U.S. 128 (1965) .................................................................................. 31

*United States v. National Financial Services, Inc.*,
98 F.3d 131 (4th Cir. 1996) ....................................................................... 10

*White v. Abco Engineering Corp.*,
199 F.3d 140 (3d Cir. 1999) ...................................................................... 34

pds1300

## Statutes

15 U.S.C. § 1692 .................................................................................. 9

15 U.S.C. § 1692(a) ........................................................................... 41

15 U.S.C. § 1692d(6) .................................................................. 14, 15

15 U.S.C. § 1692e(11) ........................................................ 12, 13, 14, 15

15 U.S.C. § 1692e(3) ....................................................................... 12

15 U.S.C. § 1692i(a)(2)(B) .............................................................. 41

15 U.S.C. § 1692k(d) ....................................................................... 34

28 U.S.C. § 1391 ........................................................................ 28, 29

28 U.S.C. § 1391(b) .................................................................... 28, 34

28 U.S.C. § 1391(c) ......................................................................... 29

28 U.S.C. § 1404(a) ................................................................ 25, 28, 34

28 U.S.C. § 1404(b) ........................................................................... 8

28 U.S.C. § 1406(a) ............................................................ 25, 28, 32, 34

California Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788 *et seq*. ............................................................................... 12

Texas Debt Collection Practices Act, Tex. Fin. Code §§ 392 *et seq* ............ 12

## Rules

*Fed.R.Civ.P.* 12(b)(3) ...................................................................... 8

*Fed.R.Civ.P.* 19 ............................................................................. 30

pds1300

*Fed.R.Civ.P.* 20 ......................................................................................... 30

*Fed.R.Civ.P.* 20(a)(1)................................................................................. 30

*Fed.R.Civ.P.* 20(a)(1)(A) ...................................................................... 31, 32

*Fed.R.Civ.P.* 20(a)(1)(B) ............................................................................ 32

*Fed.R.Civ.P.* 23(a)(1)................................................................................. 30

*Fed.R.Civ.P.* 23(a)(2) and (3) ..................................................................... 31

*Fed.R.Civ.P.* 42(b) ............................................................................... 27, 34

*New Jersey Rules of Professional Conduct* 5.5(c)(3) ............................ 17, 34

## Other Authorities

5 *Moore's Federal Practice* § 23.2.04[3] ................................................ 29, 40

Federal Trade Commission, *Statements of General Policy or Interpretation*,
Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg.
50,097, at 50,105 (1988) ........................................................................ 11

pds1300

## Introductory Statement

Asserting that venue was improperly laid, Defendant moves to dismiss the claims of the nine non-New Jersey Plaintiffs or to transfer them to the Northern District of Georgia. Nevertheless, Defendant does concede that the claims asserted by Mark Apostolou, a New Jersey citizen, were properly brought in the District of New Jersey and that Defendant is subject to personal jurisdiction here.

Were Defendant's improper venue argument correct, plaintiffs from multiple states could never join in one action to bring their related federal claims unless all claims were connected to a single federal judicial district. Just as Defendant has no objection to Mr. Apostolou's New Jersey action, Defendant should have had no objection were each Plaintiff to have brought a distinct action in their respective home districts. Thus, under Defendant's view, Plaintiffs could commence ten actions around the country but could not join their claims together in one action. Bringing one action, as Plaintiffs did here, allows for consistent results and conservation of judicial resources.

Defendant then argues that New Jersey is an inconvenient forum. Understandably, Defendant would rather litigate on its home turf in Georgia. While Defendant attempts to show how it lacks connections to New Jersey, it withholds information about its relationships with this State and how it

conveniently defends FDCPA claims throughout the United States. Indeed, in the last two years, Defendant has litigated virtually the same claims as are alleged here in district courts located in Ohio, Georgia, Alabama, Pennsylvania, California, Michigan, New York, Florida, Maryland and Minnesota. Never before has Defendant filed a motion to change venue.

Defendant has failed to carry its burden of showing that the circumstances are so strong as to override Plaintiffs' choice of forum. Its motion should be denied.

pds1300

## Procedural History

The Complaint was filed on October 14, 2007. The First Amended Complaint was filed on December 12, 2007. Plaintiffs obtain personal service on January 31, 2008. The Proof of Service was filed on February 27, 2008. Plaintiffs indulged Defendant's request for more time to answer and an Order was entered on March 3, 2008 granting Defendant until April 18, 2008 to respond to the First Amended Complaint.

From January 31, 2008 to April 16, 2008 – 2½ months – Defendant finally respond to the Amended Complaint with a Motion for "an Order Dismissing and/or Transferring Venue of this action pursuant to Fed.R.Civ.P. 12(b)(3) and/or 28 U.S.C. §1404(b), respectively, and granting such other and further relief as this Honorable Court deems just and proper." Defendant's Motion (Docket Doc. 8). Defendant has not hinted at a substantive response to any of the claims.

Plaintiffs oppose this Motion and, for the reasons below, it should be denied.

pds1300

## Statement of the Case

The Complaint asserted claims by Mark Apostolou and Chandelle Whitney. The First Amended Complaint joined eight additional Plaintiffs with claims related to those asserted in the Complaint.

As the First Amended Complaint alleges, Plaintiffs are consumers seeking relief from Defendant's debt collection practices. Those violative practices include sending mass-produced, computer-generated letters without meaningful attorney review, and leaving telephone messages omitting required information, all in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA").

Defendant is a law firm with its main office in Atlanta, Georgia. It "practices in the field of consumer debt collection." Affidavit of W. Christopher Bracken, III, dated March 18, 2008 (Docket Doc. 8-9) ("Bracken Affidavit"), ¶¶2 to 3. While the Bracken Affidavit attempts to disassociate Defendant from New Jersey, it is not forthcoming about either its nationwide collection activities or its New Jersey contacts. Plaintiffs' research reveals that Defendant engages in collection activities everywhere and practices law in New Jersey.

pds1300

**A.     The Claims.**

*1.     No-meaningful-attorney-review letters.*

Except Jeri B. Schwebs, all Plaintiffs assert claims based on Defendant's "computer-generated, mass-produced" letters. Those letters violate the FDCPA because the letters "did not receive any meaningful review or involvement by a licensed attorney prior to mailing, and falsely represented that licensed attorneys were directly or personally involved in reviewing this Plaintiff's file." First Amended Complaint, ¶¶61, 81, 102, 121, 153, 172, 194, 215 and 235.

Courts have recognized that "A debt collection letter on an attorney's letterhead conveys authority and credibility." *Crossley v. Lieberman*, 868 F.2d 566, 570 (3d Cir. 1989). Unless the attorney has in fact reviewed the debtor's file and made a professional judgment that whatever action is threatened is appropriate, and the threatened action has been authorized by the creditor, the use of such letters is a violation of §1692e(3), which prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." *Clomon v. Jackson*, 988 F.2d 1314, 1321 (2d Cir. 1993); *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996); *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002); *United States v. National Financial Services, Inc.*, 98 F.3d 131 (4th Cir. 1996);

*Taylor v. Perrin, Landry, DeLaunay & Durand*, 103 F.3d 1232 (5th Cir. 1997); *Bitah v. Global Collection Servs.*, 968 F.Supp. 618 (D.N.M. 1997); *United States v. Central Adjustment Bureau, Inc.*, 667 F.Supp. 370, 380-81 (N.D.Tex. 1986) ("The attorney must have sufficient information to satisfy himself that it is proper to send the dunning letter, *i.e.*, he must investigate the merits of the claim before making a demand for payment. ... the attorney must have the file for review to determine the merits of the claim, as well as the limits of his authority"); Federal Trade Commission, *Statements of General Policy or Interpretation*, Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. 50,097, at 50,105 (1988) ("a debt collector may not send a computer-generated letter deceptively using an attorney's name"). "[A]n attorney sending dunning letters must be directly and personally involved in the mailing of the letters in order to comply with the strictures of FDCPA. This may include reviewing the file of individual debtors to determine if and when a letter should be sent or approving the sending of letters based on the recommendations of others. [citation omitted] Given these requirements, ... <u>there will be few, if any, cases in which a mass-produced collection letter bearing the facsimile of an attorney's signature will comply with the restrictions imposed by section 1692e</u>." *Avila*, 84 F.3d at 228 (emphasis added).

pds1300

Thus, Plaintiffs allege that these no-meaningful-review letters violate the FDCPA under 15 U.S.C. § 1692e(3) and assert, as "Class I," those consumers in the United States who received those letters. First Amended Complaint, ¶256. Plaintiffs also assert two sub-classes based on the same conduct. For "Class I-C," they assert claims of California consumers under California's FDCPA, California Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788 *et seq.* ("RFDCPA"). First Amended Complaint, ¶257. For "Class I-T," they assert claims of Texas consumers under Texas's FDCPA, Texas Debt Collection Practices Act, Tex. Fin. Code §§ 392 *et seq.* ("TDCPA"). First Amended Complaint, ¶258.

## 2.    *No-disclosures letters*.

The mass-produced, computer-generated letters sent to Chandelle Whitney violate the FDCPA for the additional reason that they were "sent from a debt collector or that MANN BRACKEN is in fact a debt collector," or "that MANN BRACKEN is attempting to collect a debt and that any information obtained will be used for that purpose." First Amended Complaint, ¶¶198 and 199. Like the no-meaningful-attorney-review letters, these no-disclosures letters violate the FDCPA under 15 U.S.C. § 1692e(3). They also violate the FDCPA under 15 U.S.C. § 1692e(11), which requires that an initial communication disclose "that the debt collector is attempting

pds1300

to collect a debt and that any information obtained will be used for that purpose," and that subsequent communications disclose "that the communication is from a debt collector." These disclosures are missing from the no-disclosure letters.

Plaintiffs seek certification for "Class II," being those consumers in the United States who received these no-disclosure letters. First Amended Complaint, ¶259.

## 3.    *Telephone Messages.*

All Plaintiffs allege that Mann Bracken left telephone messages which failed to disclose "that the communication was from a debt collector," "the purpose of the communication (*i.e.*, an attempt to collect a debt)," and "that the communication was not from an attorney." First Amended Complaint ¶¶68, 88, 109, 128, 140, 160, 179, 203, 222 and 242.

It is fairly well established that telephone messages left for consumers by debt collectors must contain the disclosures required by 15 U.S.C. § 1692e(11). *See e.g.*, *Foti v. NCO Financial Systems*, 424 F. Supp. 2d 643 (S.D.N.Y. 2006); *Costa v. Nat'l Action Fin. Servs.*, 2007 U.S. Dist. LEXIS 93230 (E.D. Cal. 2007); *Belin v. Litton Loan Servicing*, 2006 U.S. Dist. LEXIS 47953 (M.D. Fla. 2006); *Hosseinzadeh v. M.R.S. Associates*, 387 F. Supp. 2d 1104 (C.D. Cal. 2005); *Leyse v. Corporate Collection Services*,

2006 U.S. Dist. LEXIS 67719 (S.D.N.Y. 2006); *Stinson v. Asset Acceptance, LLC*, 2006 U.S. Dist. LEXIS 42266 (E.D. Va. 2006). *See also, Tolentino v. Friedman*, 46 F.3d 645, 650 (7th Cir. 1995) (holding that 15 U.S.C. § 1692e(11) expressly requires that "the debt collection warning must be contained in 'all' communications" including all subsequent communications). Plaintiff's counsel is aware of an unreported decision from the Western District of Oklahoma, *Biggs v. Credit Collections, Inc.*, Case No. CIV-07-0053-F (W.D.Okla. November 15, 2007) where the consumers' summary judgment motion was denied because the court could not conclude, as a matter of law, that the voicemail messages in question were communications under the FDCPA.

The FDCPA also requires that telephone calls from a debt collector must have "meaningful disclosure of the caller's identity." 15 U.S.C. § 1692d(6). Messages fail to give meaningful disclosure of the collector's identity when they fail to include the nature or purpose of the call. This conduct constitutes a *per se* violation of 15 U.S.C. § 1692d(6). *See e.g.*, *Hosseinzadeh v. M.R.S. Associates*, *supra*; *Costa v. Nat'l Action Fin. Servs.*, *supra*. "Meaningful disclosure" requires a debt collector to "disclose enough information so as not to mislead the recipient as to the purpose of the call."

*Id.; see also, Glover v. Client Servs.*, 2007 U.S. Dist. LEXIS 73604, *14-16 (W.D. Mich. 2007).

District Courts have granted summary judgment in favor of consumers on facts substantially similar to those alleged here. *See, Hosseinzadeh v. M.R.S. Associates*, *supra*; *Costa v. Nat'l Action Fin. Servs.*, *supra;* and *Masciarelli v. Richard J. Boudreau & Assocs., LLC*, 2007 U.S. Dist. LEXIS 95468 (D. Mass. 2007).

Consequently, Plaintiffs allege that the telephone messages violate the FDCPA under 15 U.S.C. §§ 1692d(6) and e(11) and assert, as "Class III," those consumers in the United States who received those messages. First Amended Complaint, ¶260. Plaintiffs also assert two sub-classes based on the same conduct. For "Class III-C," they assert claims of California consumers under the RFDCPA. First Amended Complaint, ¶261. For "Class III-T," they assert claims of Texas consumers under TDCPA . First Amended Complaint, ¶262.

**B.     A Convenient Location.**

As alleged, Mark A. Apostolou resides in Livingston, New Jersey. John M. Wade is nearby in Staten Island, New York. Richard S. Crews resides in Tulsa, Oklahoma; Robert H. Gardner, Sr. in Phoenix, Arizona; Arnoud C. Moes in Tega Cay, South Carolina; Jeri B. Schwebs in Orange,

California; Bradley M. Sondrol in Fargo, North Dakota; Chandelle L. Whitney in Alton, New Hampshire; Don Wideman in Bryan, Texas; and Sygmund N. Williams in Fresno, California.

Defendant is a debt collector everywhere and litigates everywhere.

According to its letterhead, Mann Bracken has offices in Georgia, Virginia, North Carolina, Tennessee and Texas. See any exhibit to the First Amended Complaint. According to its website, "Mann Bracken practices law in the states of Georgia, Maryland, North Carolina, South Carolina, Tennessee, Texas, Virginia, West Virginia, and the District of Columbia… ." Exhibit "R", page 1 (Note: Plaintiffs' Exhibits are designated by letters to distinguish them from Defendant's exhibits, which use numbers). Mann Bracken arbitrates in all fifty States. Exhibit "R", page 6. New Jersey construes arbitration activities as the practice of law. Committee on the Unauthorized Practice of Law, *Opinion 43 (Supplement to Opinion 28)*, 16 N.J.L. 191 (January 8, 2007) (copy provided as Exhibit "S"). If other States follow New Jersey, then Mann Bracken practices law in every State.

Based on those arbitration activities, Mann Bracken's attorneys are obligated, among other things, to "consent to the appointment of the Clerk of the [New Jersey] Supreme Court as agent upon whom service of process may be made for all actions against the lawyer or the lawyer's firm that may

pds1300

arise out of the lawyer's participation in legal matters in this jurisdiction." *New Jersey Rules of Professional Conduct* 5.5(c)(3). The failure to do so constitutes the unauthorized practice of law. *Opinion 43, supra.*

Defendant argues that there is no personal jurisdiction over it with respect to the claims of the non-Apostolou Plaintiffs because those claims do not have contacts with New Jersey sufficient to create *specific* jurisdiction. Defendant has not foreclosed the possibility, however, that it may be subject to *general* jurisdiction in New Jersey if its contacts with New Jersey are "sufficiently substantial and of such a nature" or "continuous and substantial" as to permit the exercise of general jurisdiction. *Perkins v. Beguet Consolidated Mining Co.*, 342 U.S. 437, 447 (1952); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984). Defendant has not disclosed any information from which the Court could determine whether its contacts with New Jersey are "continuous and substantial," including (1) the number of phone calls placed to New Jersey consumers, (2) the number of letters sent to New Jersey consumers, (3) the number of arbitrations commenced against New Jersey consumer, (4) whether it actually appointed the Clerk of Supreme Court as its agent for process, and (5) the amount of money it has collected from New Jersey consumers.

pds1300

From research conducted by Plaintiffs' counsel, it appears that, consistent with its nationwide collection activities, Defendant is an experienced litigant throughout the country. Exhibits "A" and "B". That research reveals 79 lawsuits in the U.S. District Courts in which Defendant is a party since from 2002 to May 18, 2008. Exhibits "A". From 1996 through 2004, the number of lawsuits were less than ten per year. Exhibit "B", page entitled "Trend Analysis." In 2005, the number was eighteen, then thirteen in 2006, twenty-four in 2007 and nineteen through mid-May 2008. *Id.* Those litigations have been, to borrow the quote in Defendant's Brief, in jurisdictions from "sea to shining sea." Defendant's Brief, page 1 (Docket Document 8-5). Thus, in recent years, Defendant has been or currently is a litigant in 38 different United States District Courts from Connecticut to California, and Minnesota to Florida. Defendant has had cases in all four District Courts in New York, in the Eastern and Western Districts of Pennsylvania, as well as other cases in this District.

Looking back just two years has revealed the following fifteen lawsuits with claims against Defendant based on voicemail messages or mass-produced letters:

1.     *Mullen v. Mann Bracken, LLC et al., U.S. District Court, Southern District of Ohio, Case No. 2:06cv848*. This is an individual action

pds1300

brought against Mann Bracken alleging that it violated 15 U.S.C. § 1692e(3) by sending computer generated, mass-produced, letters on attorney letterhead, which received no meaningful review or involvement by an attorney prior to mailing (Exhibit "C").

2.    *Macklin v. Mann Bracken, LLC, U.S. District Court, Northern District of Georgia, Case No. 1:07cv417.* This is an individual action brought against Mann Bracken alleging that it violated 15 U.S.C. §§ 1692e and 1692e(10) by leaving telephonic voice messages identical to the ones in this case, which specifically failed to disclose: (i) that the communication was from a debt collector; (ii) that the purpose of the communication was an attempt to collect a debt; and (iii) that the caller was a non-attorney debt collector (Exhibit "D").

3.    *Vingers v. Mann Bracken, LLC, U.S. District Court, Northern District of Alabama, Case No. 2:07cv843.* This is an individual action brought against Mann Bracken alleging that it violated 15 U.S.C. §§ 1692d, 1692d(5), 1692e, 1692e(3), and 1692e(10) by leaving telephonic voice messages identical to the ones in this case, which specifically failed to disclose: (i) that the communication was from a debt collector; (ii) that the purpose of the communication was an attempt to collect a debt; and (iii) that the caller was a non-attorney debt collector (Exhibit "E").

pds1300

4.     *Jones v. Mann Bracken, LLC, U.S. District Court, Western District of Pennsylvania, Case No. 2:07cv794.* This is an individual action brought against Mann Bracken alleging that it violated 15 U.S.C. §1692e(11) by leaving telephonic voice messages identical to the ones in this case, which specifically failed to disclose: (i) that the communication was from a debt collector; (ii) that the purpose of the communication was an attempt to collect a debt; and (iii) that the caller was a non-attorney debt collector (Exhibit "F"). The lawsuit also alleged that Mann Bracken violated 15 U.S.C. § 1692e(3) by sending computer generated, mass-produced, letters on attorney letterhead, which received no meaningful review or involvement by an attorney prior to mailing (Exhibit "F").

5.     *Quicho, et al. v. Mann Bracken, LLC, et al., U.S. District Court, Northern District of California, Case No. 3:07cv3478.* This is a class action lawsuit brought against Mann Bracken alleging that it violated 15 U.S.C. § 1692e(3), and Cal. Civ. Code §§ 1788.13(c) and 1788.17, by sending computer generated, mass-produced, letters on attorney letterhead, which received no meaningful review or involvement by an attorney prior to mailing (Exhibit "G"). Defendant moved to dismiss. A copy of the opinion and order is included in Exhibit "G" and, in pertinent part, provides:

> In moving to dismiss, defendants argue that because an attorney
> did not sign the letter and because the letter states that it is from a debt

collector, the "least sophisticated consumer" would not misperceive the level of attorney involvement.

To determine if the FDCPA has been violated, the language of the letter is judged by the "least sophisticated debtor" standard. Swanson v. Southern Oregon Credit Service, Inc., 869 F.2d 1222 (9th Cir. 1988). I cannot say as a matter of law that the letter here, printed on defendants' letterhead identifying defendants as "ATTORNEYS AT LAW," and signed by "MANN BRACKEN, LLC", could not be perceived as constituting the work of an attorney, especially when there is no disclaimer indicating otherwise. See Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360, 364 (2d Cir. 2005); see also Dupuy v. Waltman, Wienberg & Reis Co., 442 F. Supp. 2d 822, 825 (N.D. Cal. 2006). The second paragraph of the letter lists the numerous jurisdictions where "this firm" practices law, and states that the sender "intend[s] to pursue legal remedies". Although the letter states that it is from a "debt collector," that statement does not rule out the possibility that the letter is from an attorney, as attorneys can be debt collectors. See, e.g., Greco, 412 F.3d at 364; Dupuy, 442 F. Supp. at 825. For these reasons, defendants' motion is DENIED as to this claim.

6.      *Yeary v. Riddle & Associates, P.C., et al., U.S. District Court, Northern District of Georgia, Case No. 1:07cv2268.* This is an individual action brought against Mann Bracken alleging that it violated 15 U.S.C. §§ 1692e and 1692e(10) by leaving telephonic voice messages identical to the ones in this case, which specifically failed to disclose: (i) that the communication was from a debt collector; (ii) that the purpose of the communication was an attempt to collect a debt; and (iii) that the caller was a non-attorney debt collector (Exhibit "H").

7.      *Rosenberry v. Mann Bracken, LLC, U.S. District Court, Northern District of California, Case No. 5:07cv05448.* This is an individual

pds1300

action brought against Mann Bracken alleging that it violated 15 U.S.C. §§ 1692d(6), 1692e(10), and 1692e(11), and Cal. Civ. Code §§ 1788.11(b) and 1788.17, by leaving telephonic voice messages identical to the ones in this case, which specifically failed to disclose: (i) that the communication was from a debt collector; (ii) that the purpose of the communication was an attempt to collect a debt; and (iii) that the caller was a non-attorney debt collector (Exhibit "I").

8.      *Van Valkenburg v. Mann Bracken, LLC, U.S. District Court, Western District of Michigan, Case No. 1:07cv01227*. This is an individual action brought against Mann Bracken alleging that it violated 15 U.S.C. §§ 1692d and 1692e by leaving telephonic voice messages identical to the ones in this case, which specifically failed to disclose: (i) that the communication was from a debt collector; (ii) that the purpose of the communication was an attempt to collect a debt; and (iii) that the caller was a non-attorney debt collector (Exhibit "J").

9.      *McHenry v. Mann Bracken, LLC, U.S. District Court, Eastern District of Pennsylvania, Case No. 2:08cv00947*. This is an individual action brought against Mann Bracken, which alleges the exact same types of telephone messages, and which involves the exact same letter at issue in this

lawsuit, but which fails to allege the same causes of action as those alleged in this lawsuit (Exhibit "K").

10.    *Voyles v. Mann Bracken, LLC, U.S. District Court, Eastern District of Pennsylvania, Case No. 2:08cv00988.* This is an individual action brought against Mann Bracken alleging that it violated 15 U.S.C. §§ 1692d, 1692e(10), and 1692e(11) by leaving telephonic voice messages identical to the ones in this case, which specifically failed to disclose: (i) that the communication was from a debt collector; (ii) that the purpose of the communication was an attempt to collect a debt; and (iii) that the caller was a non-attorney debt collector (Exhibit "L").

11.    *Brown v. Mann Bracken, LLC, U.S. District Court, Southern District of New York, Case No. 1:08cv02383.* This is a class action lawsuit brought against Mann Bracken alleging that it violated 15 U.S.C. §§ 1692e(3) and 1692e(10) by sending computer generated, mass-produced, letters on attorney letterhead, which received no meaningful review or involvement by an attorney prior to mailing (Exhibit "M").

12.    *Harstine, et al. v. Mann Bracken, LLC, et al., U.S. District Court, Southern District of Florida, Case No. 0:08cv60529.* This is a class action lawsuit brought against Mann Bracken alleging that it violated, *inter alia*, 15 U.S.C. § 1692e(10) by sending computer generated, mass-produced,

pds1300

letters on attorney letterhead, which received no meaningful review or involvement by an attorney prior to mailing (Exhibit "N").

13.  *Milton v. Direct Merchants Bank, et al., U.S. District Court, District of Maryland, Case No. 8:08cv01090*. This is an individual action brought against Mann Bracken, which alleges the same types of telephone messages, and which involves the exact same letter at issue in this lawsuit, but which alleges, *inter alia*, that the letter violates 15 U.S.C. § 1692e(3) (Exhibit "O").

14.  *Quimby v. Mann Bracken, LLC, et al., U.S. District Court, District of Minnesota, Case No. 0:08cv01182*. This is an individual action brought against Mann Bracken alleging that it violated 15 U.S.C. §§ 1692d, 1692e, and (11) by leaving telephonic voice messages identical to the ones in this case, which specifically failed to disclose: (i) that the communication was from a debt collector; (ii) that the purpose of the communication was an attempt to collect a debt; and (iii) that the caller was a non-attorney debt collector (Exhibit "P").

15.  *Fukudu, et al. v. Mann Bracken, LLC, et al., U.S. District Court, Northern District of California, Case No. 3:08cv00359*. This is a class action lawsuit brought against Mann Bracken alleging that it violated 15 U.S.C. § 1692e(3), and Cal. Civ. Code §§ 1788.13(c) and 1788.17, by

sending computer generated, mass-produced, letters on attorney letterhead, which received no meaningful review or involvement by an attorney prior to mailing. The *Fukudu* lawsuit further alleges that Mann Bracken violated 15 U.S.C. §§ 1692d(6) and 1692e(11), and Cal. Civ. Code §§ 1788.11(b) and 1788.17, by leaving telephonic voice messages identical to the ones in this case, which specifically failed to disclose: (i) that the communication was from a debt collector; (ii) that the purpose of the communication was an attempt to collect a debt; and (iii) that the caller was a non-attorney debt collector. The *Fukudu* complaint was not posted on the Northern District of California ECF System; however, these claims and the status of the lawsuit are contained in the Parties' Joint Case Management Statement filed in that case on April 15, 2008 (Exhibit "Q").

Presumably, the same convenience issues existed in those fifteen actions. Thus, Defendant had the same witness and party convenience issues. Yet, as far as Plaintiffs' counsel can ascertain, Defendant never moved for dismissal or transfer under 28 U.S.C. § 1404(a) (inconvenient venue) or §1406(a) (improper venue) – not in those fifteen actions nor in any other action.

The Bracken Affidavit reflects that the evidence is either attached to the Amended Complaint, stored electronically or otherwise in Defendant's

control. Defendant does not indicate whether all of the relevant evidence is stored electronically, its volume or ease of productions for discovery or trial. Furthermore, there is no identification of witnesses are and whether any of them are non-parties.

Information on Defendant's website is, however, revealing.

> The Mann Bracken Solutions Development team has created a unique platform for Mann Bracken. We have developed a secure open source database that operates as a fulcrum for all reporting, document management, accounting, and callcenter functions. [Exhibit "R", page 4 (emphasis added).]

Apparently, all of Defendant's records are maintained electronically and stored in a central location. As regards the specific claims here which are based on demand letters and telephone messages, the website's "Solutions Development" page reflects Defendant's technological controls: "Our telephony and demand letter protocols are mapped to meet the highest compliance considerations." Exhibit "R", page 4. This case challenges whether those "protocols" do indeed "meet the highest compliance consideration." Plaintiffs think not.

## Legal Arguments

Plaintiff's Choice of Venue "Should Rarely Be Disturbed." Defendant Has Failed to Make the Required Strong Showing that Venue is Improper or that Venue Should be Changed for the Convenience of the Parties and Witnesses, or in the Interests of Justice. Therefore, Defendant's Motion Should be Denied.

Defendant moves to dismiss the claims of all but one Plaintiff based on venue. "MannBracken moves to dismiss the claims of the nine (9) Plaintiffs who do not reside in New Jersey." Defendant's Brief, page 1. Defendant "does not challenge this Court's jurisdiction as to the claims of Plaintiff Mark Apostolou;" consequently, "this Court should dismiss, without prejudice, the claims of all Plaintiffs except for Mark Apostolou." Defendant's Brief, at pages 6 and 7. Thus, if the motion were granted, Mark Apostolou's claims would remain in this Court.

Defendant's proposed order is inconsistent and is drafted to dismiss the _entire_ case, not simply the non-Apostolou claims. Also inconsistent is the proposed order's dismissal _with prejudice_. Defendant's Brief is correct that dismissal is without prejudice. Defendant's Brief, at page 7; see, Fed.R.Civ.P. 42(b) (dismissal on venue grounds is without prejudice). Consequently, the discussion assumes that the Motion does not seek any relief as to Apostolou's claims and that the dismissal requested is without prejudice.

pds1300

Defendant bears the burden of proving improper venue. *Myers v. American Dental Ass'n*, 695 F.2d 716, 725 (3d Cir. 1982). *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 609 (3d Cir. 1991).

Dismissal is only available under 28 U.S.C. § 1406(a) when venue was improperly laid under 28 U.S.C. § 1391. *Jumara v. State Farm*, 55 F3d 873, 878 (3d Cir. 1995). Dismissal is not available for convenience-transfers under 28 U.S.C. § 1404(a). 28 U.S.C. § 1406(a) section provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

Venue was, however, properly laid in this court under 28 U.S.C. § 1391 and, therefore, 28 U.S.C. § 1406(a) is inapplicable. 28 U.S.C. § 1391(b) provides:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Defendant "resides" in New Jersey for purposes of 28 U.S.C. § 1391 which, at subparagraph c, states, in part:

pds1300

> For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

Unincorporated associations are treated as corporations under §1391(c). *Denver & R.G.W.R. Co. v. Brotherhood of R.R. Trainmen*, 387 U.S. 556, 562 (1967); see, also, 5 *Moore's Federal Practice* § 23.2.04[3]. So are trusts and partnerships. *Kingsepp v. Wesleyan University*, 763 F.Supp. 22, 28 (S.D.N.Y. 1991); *Delgett v. Wolpoff & Abramson, L.L.P.*, 2007 U.S. Dist. LEXIS 86064, *4 (E.D.Pa. November 21, 2007). While counsel can find no reported decision expressly addressing venue for limited liability companies, Defendant, a limited liability company, should be treated as a corporation for purposes of 28 U.S.C. § 1391(b) and (c). Therefore, venue is permitted in any judicial district in which Defendant was subject to personal jurisdiction when this action was commenced.

Defendant does not challenge venue on Apostolou's claims. Indeed, because Defendant admits personal jurisdiction on Apostolou's claims, New Jersey is a proper venue. See, 28 U.S.C. § 1391(b)(1) and (c). But Defendant complains that, if each non-Apostolou Plaintiff's claims is viewed separately, this Court would lack personal jurisdiction over Defendant as to those claims. Defendant argues that, as to those claims, Defendant lacks sufficient contacts with New Jersey to justify specific *in personam*

jurisdiction. The inherent flaw in Defendant's analysis is that there is no basis to separate any Plaintiff nor to isolate his or her claims. All claims arise from the same series of transactions or occurrences and there exist common legal and factual questions. Thus, consistent with Fed.R.Civ.P. 20, all Plaintiffs' claims were properly joined in one action.

Before discussing why joinder is permitted under Fed.R.Civ.P. 20, Defendant's reference to Fed.R.Civ.P. 19 must be addressed. In its Brief, at page 7 and footnote 5, Defendant appears to argue that the necessary joinder rule, Fed.R.Civ.P. 19, cannot bestow jurisdiction. That Rule has no application here. No one is arguing that a necessary party was omitted and needs to be joined. To the contrary, one of the reasons this action was brought on a class basis is that joinder of interested parties would be impractical. See, Fed.R.Civ.P. 23(a)(1). Here, the related nature of all Plaintiffs' claims permit them to join in one action under Fed.R.Civ.P. 20.

Fed.R.Civ.P. 20(a)(1) provides:

> (1) Plaintiffs. Persons may join in one action as plaintiffs if:
> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all plaintiffs will arise in the action.

These Rule 20(a)(1) issues are similar to the commonality and typicality issues for class certification. *See*, Fed.R.Civ.P. 23(a)(2) and (3). Here, Plaintiffs' claims deal with Defendant's conduct as lawyers practicing in the field of consumer debt collection. *See*, Bracken Affidavit, at ¶3. Specifically, the Amended Complaint addresses Defendant's failure (a) to undertake meaningful attorney review prior to sending letters to consumers and (b) to make the proper disclosures in telephone voicemail messages. Each Plaintiff, except Jeri Schwebs, has the same claim with respect to substantially similar letters and each Plaintiff has the same claim with respect to substantially similar messages.

Thus, the relief sought – both individually and as a class – is based on Defendant's policies and practices in its consumer collection law practice as they apply to the review of letters by attorneys and to the leaving of messages and, therefore, the relief sought does arise "out of the same transaction, occurrence, or series of transactions or occurrences." Fed.R.Civ.P. 20(a)(1)(A); *see*, *United States v. Miss.*, 380 U.S. 128, 142 (1965) (policies and practices on discrimination claim constitute the same series of occurrences). Defendant's website indicates that demand letters and "telephony" are "mapped." This implies that letters and voicemail follow established policies. Likewise, Mr. Bracken's Affidavit attests to the fact

pds1300

that everything was done under one roof. Plaintiffs' claims arise from the implementation of these policies. Thus, the claims are sufficiently related for purposes of Fed.R.Civ.P. 20(a)(1)(A). Moreover, the same questions of law under the FDCPA arise as to all claims; namely, whether the letters or messages violate the FDCPA. Fed.R.Civ.P. 20(a)(1)(B). Consequently, joinder was proper.

Because the Plaintiffs were properly joined, New Jersey is a proper venue for all Plaintiffs. Consequently, there is no basis for dismissal or transfer under 28 U.S.C. § 1406(a).

If, however, it were concluded that joinder was improper and that the Plaintiffs should be severed under Fed.R.Civ.P. 21, then the analysis of improper venue under 28 U.S.C. § 1406(a) must be undertaken.

Defendant argues that venue was improper as to the non-Apostolou Plaintiffs because there is no personal jurisdiction. Defendant only argues specific jurisdiction and does not address the law or facts relating to general jurisdiction.

General jurisdiction exists when there is personal jurisdiction "not arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales, supra,* 466 U.S. at 414n9. Defendant may very well be subject to general jurisdiction in New Jersey. Defendant advertises

pds1300

itself as a debt collection law firm pursuing collection in all fifty states. With respect to its arbitration work against New Jersey residents, Mann Bracken practices law in the State of New Jersey and is required to appoint the Clerk of the New Jersey Supreme Court as its agent for service of process. *Opinion 43, supra*; and see, *Bane v. Netlink, Inc.*, 925 F.2d 637, 639 (3rd Cir. 1991) (observing that, under Pennsylvania statute, foreign corporation registered to do business in Pennsylvania is subject to general jurisdiction notwithstanding the absence of a physical presence or other contacts). Furthermore, the nature and extent of Defendant's collection activities in New Jersey, including telephone calls, letters, receipts from New Jersey consumers, and arbitrations, may very well constitute "continuous and systematic" contacts with New Jersey sufficient to justify general personal jurisdiction. *Helicopteros Nacionales, supra,* 466 U.S. at 414. Were the Court presented with a motion to dismiss asserting lack of personal jurisdiction, Plaintiffs would seek limited discovery relevant to Defendant's "continuous and systematic" contacts with New Jersey including the number of calls and letters placed to New Jersey consumers on a daily basis, the amount of money Defendant collects from New Jersey consumers, the number of arbitrations Defendant commenced or processed against New Jersey consumers, and whether Defendant's attorneys properly registered

pds1300

with the New Jersey Supreme Court. *See*, *New Jersey Rules of Professional Conduct* 5.5(c)(3). The relevant time period would be for the one-year limitations period preceding the commencement of this action. See, 15 U.S.C. § 1692k(d).

Again, it is Defendant's burden to show that venue was improper. *Myers, supra.* Defendant has not submitted any fact or law on the issue of general personal jurisdiction. If Defendant is subject to general personal jurisdiction in New Jersey, then it resides here for purposes of 28 U.S.C. § 1391(b) and venue was properly laid. Defendant has not carried its burden.

If, however, §1406(a) were to apply, transfer – and not dismissal – should be the remedy. Any dismissal should be without prejudice, Fed.R.Civ.P. 42(b), but here dismissal would effectively be with prejudice based on the one-year limitations period, 15 U.S.C. § 1692k(d). Therefore, "in the interest of justice," the severed claims should be transferred. 28 U.S.C. § 1406(a); see, *White v. Abco Engineering Corp.*, 199 F.3d 140, 144-145 (3d Cir. 1999) (noting ability of court to sever claims prior to inter-district transfer).

Based on the inapplicability of 28 U.S.C. § 1406(a), if an inter-district transfer were appropriate at all, it would have to find its basis under 28 U.S.C. § 1404(a). That section provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The statute identifies three focus areas – the parties' convenience, the witnesses' convenience, and the interests of justice. Those areas have expanded into a multi-factor analysis.

The factors are broken down, much like the statute, into private and public considerations.

> The private interests have included: plaintiff's forum preference as manifested in the original choice, 1A PT. 2 MOORE'S ¶ 0.345[5], at 4363; the defendant's preference, 15 WRIGHT, MILLER & COOPER § 3848, at 385; whether the claim arose elsewhere, *id.* § 3848; the convenience of the parties as indicated by their relative physical and financial condition, *id.* § 3849, at 408; the convenience of the witnesses — but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, *id.* § 3851, at 420-22; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum), *id.* § 3853.
>
> The public interests have included: the enforceability of the judgment, 1A PT. 2 MOORE'S ¶ 0.345[5], at 4367; practical considerations that could make the trial easy, expeditious, or inexpensive, *id.;* the relative administrative difficulty in the two fora resulting from court congestion, *id.,* at 4373; 15 WRIGHT, MILLER & COOPER § 3854; the local interest in deciding local controversies at home, 1A PT. 2 MOORE'S ¶ 0.345[5], at 4374; the public policies of the fora, *see* 15 WRIGHT, MILLER & COOPER § 3854; and the familiarity of the trial judge with the applicable state law in diversity cases, *Id.* [*Jumara v. State Farm*, 55 F3d 873, 879-880 (3d Cir. 1995).]

Defendant acknowledges that, were Apostolou the sole Plaintiff, venue should remain in New Jersey. Therefore, inherent in Defendant's

argument is that Mr. Apostolou's interests should be devalued because other Plaintiffs are joined. There is no reason to do so. His interests in litigating in New Jersey remain the same and justify the filing of the Complaint in this Court. With the First Amended Complaint, eight Plaintiffs joined the original two, as they were entitled to do. Plaintiffs chose New Jersey and Defendant must show strong reasons why this case should be litigated elsewhere.

The first factor, Plaintiffs' preference, "should not be lightly disturbed." *Jumara, supra*, 55 F3d at 879; *Shutte v. Armco Steel*, 431 F2d 22, 25 (3d Cir. 1970) *cert. denied* 401 U.S. 910 (1971). Indeed, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). Plaintiffs chose the District of New Jersey. Citing *Job Haines Home for the Aged v. Young*, 936 F. Supp 223 (D.N.J. 1996), Defendant correctly points out that the Plaintiffs' preference is given less deference in class cases. But less deference does not mean no deference and, as Magistrate Chesler wrote in *Job Haines*, "Nevertheless, the 1404(a) factors are still balanced by the court in making a transfer determination, and <u>the balance must tip strongly in favor of transfer before disturbing the plaintiff's choice</u>." *Id.* at 228 (citing *Hardaway Constructors, Inc. v. Conesco Ind.,*

*Ltd.*, 583 F. Supp. 617, 620 (D.N.J. 1983)) (emphasis added). Defendant must, therefore, show that the other factors "tip strongly" in favor of transfer.

The Defendant argues its preference for Georgia because of the location of its records. Curiously, the same class claims were raised in an action commenced after the present case was commenced. *Fukudu, et al. v. Mann Bracken, LLC, et al., Case No. 3:08cv00359* is pending in the Northern District of California. Defendant has not raised venue issues there and seems prepared to litigate that case in California. Moreover, Defendant's litigation history indicates that it is well-equipped to litigate these issues just about anywhere in the United States – which includes New Jersey.

Defendant is not clear as to its position concerning where the claims arise. Defendant's Brief at page 10. A "substantial part of the events giving rise to a claim under the Fair Debt Collection Practices Act" is where a violative letter is received. *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 868 (2d Cir. 1992). Thus, this factor does not favor a transfer to Georgia as no letter or call was made to Georgia. Calls and letters were, however, received in New Jersey. So this factor favors Plaintiffs.

Next, Defendant addresses the convenience of the parties. Defendant's argument as to Georgia's convenience carries little weight. Defendant

engages in virtually nationwide collection activities and has a history of litigating around the country without ever seeking a change in venue to Georgia. In effect, Defendant is an experienced litigant with nationwide activities. See, *800-Flowers Inc. v. Intercontinental Flowers*, 860 F. Supp 128, 134 (S.D.N.Y. 1994) (parties' nationwide network resulted in little weight given to convenience argument).

On the other hand, Plaintiffs are individual consumers and, at least as to two of them, this Court is significantly more convenient than one in Georgia. Mark Apostolou lives in the same county as this Court and John Wade lives a few miles away in Staten Island. Thus, the convenience to Messrs. Apostolou and Wade compared with Defendant's ease of litigating nationwide tips the scales in favor of Plaintiffs' forum choice.

Defendant next makes some vague argument about phone records. "The party seeking transfer must specifically list the evidence and witnesses on which the party intends to rely in the transferee district, along with a general statement of the topics of each witness' testimony. Absent such a showing, the motion should be denied." *Editorial Musical Latino Americana v. Mar,* 829 F. Supp. 62, 66-67 (S.D.N.Y. 1993). Defendant has not the necessary showing on this factor.

pds1300

Next, Defendant argues that its books and records are in Georgia. There is no indication as to the volume of these records nor the relative convenience in bringing them to Georgia as opposed to New Jersey. Fifteen cases over the last two years dealing with the same letter and voicemail violations have not previously prompted Defendant to complain about any inconvenience. Defendant's affidavit and its website suggest that the records may all be electronically maintained, centrally located, and, if so, neither location is more convenient. On the other hand, each Plaintiff has his and her own records. With respect to the non-New Jersey Plaintiffs, one jurisdiction over another is not significant but as to Mr. Apostolou and Mr. Wade, there is significant convenience in being able to bring their records to Court in New Jersey.

Defendant's website undermines any argument concerning inconvenience in producing records. The site gloats the firm's ability to interface with its clients' diverse collection systems, to arbitrate consumer claims in all fifty states and its ability to quickly and efficiently provide the data needed for participating law firms through its "GorillaNetwork" system. Exhibit "R", page 6. It touts its Solutions Development Team and the ability to program in Java, PHP, Perl and SQL (programming languages). *Id.* at page 4. Thus, there is no inconvenience to Mann Bracken in terms of

producing any document, recording or record since everything is maintained electronically.

On the public interest factors, Defendant begins by arguing that enforceability of the judgment favors Georgia. As observed in 5 Moore's Federal Practice § 23.2.04[3], this factor carries little or no weight in light of the ease in entering a federal court judgment in any district.

Next, Defendant argues that it is more practical to try this case in Georgia. Defendant offers no facts in support. Presumably, this factor is not simply a restatement of other factors but, instead, implies different facts. Defendant argues that it is more practical for it to try the case in Georgia. The same reasoning makes trial of the case in New Jersey more convenient for Mr. Apostolou and Mr. Wade. It is hard to conceive that this factor favors any party.

Defendant then argues that there is more congestion in the District of New Jersey: 29.7 months to trial in Georgia as opposed to 36 months in New Jersey. Defendant cites to www.uscourts.gov/fcmstat/index.html, the U.S. Courts' Federal Court Management Statistics website. Another statistic from the same site is the median time to disposition. There, New Jersey is slightly ahead – 7.6 months as opposed to the Northern District of Georgia's 7.7 months. There does not appear to be a difference between the Northern

District of Georgia and the District of New Jersey which would be sufficiently significant to override Plaintiffs' forum choice.

Next, Defendant argues that local interests and public policy are neutral factors. Actually, there is a local interest and public policy favors the consumer. Congress recognized that debt collector abuses "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). The FDCPA seeks to protect consumers. Therefore, a consumer's locale has an interest in avoiding the negative societal impact from abusive debt collection practices. Indeed, the FDCPA weighed in on venue, requiring collection lawsuits to be brought in the consumer's locale. 15 U.S.C. § 1692i(a)(2)(B).

Thus, the public policy seeking to protect consumers indulges the consumer's choice of forum against the debt collector's attempt to force the litigation into its home court. None of the consumers in this case are in Georgia. The Plaintiffs selected New Jersey, being one of the States in which a Plaintiff resides. This factor favors Plaintiffs.

The last factor is the Court's familiarity with the law. As for the FDCPA claims, neither court has greater familiarity. Defendant concedes the neutrality of this factor. More to the point, Defendant offers nothing to show that this Court is less capable applying the law than another court.

pds1300

In sum, many factors are neutral, and some factors favor one party or the other. Consequently, Defendant has not carried its burden. While Plaintiffs may be scattered across the country, one of them is here in New Jersey with very strong interests in having his case litigated here. Another is just outside its border, a few miles from the Court. On balance, it cannot be said that Defendant has demonstrated that the factors tip "strongly" in favor of transfer to Georgia. *Job Haines Home for the Aged, supra,* 936 F. Supp at 228 (D.N.J. 1996).

Had the Plaintiffs' claims been raised in the manner Defendant suggests and ten separate suits filed, Plaintiffs would have been seen as trying to punish Defendant and "churn" legal fees. If Plaintiffs wanted, they could easily have split their claims and filed ten separate lawsuits. Doing so would not have served the policies of the FDCPA, class action litigation or judicial economy.

It is and never was Plaintiffs' goal to "bleed" Defendant, generate unnecessary legal fees or waste judicial resources. To Plaintiffs, it always seemed most appropriate to bring these common claims in one lawsuit – let one court manage the class claims and avoid splintered lawsuits. Oddly, Defendant finds Plaintiffs' approach objectionable.

pds1300

Consequently, Defendants motion should be denied and Defendant directed to promptly file its answer so that case can proceed to the merits of Plaintiffs' claims.

## Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss or to transfer venue.


                                        Respectfully submitted,
                                        Wacks & Hartmann, LLC
                                        *s/ Philip D. Stern*
Dated: May 19, 2008                     Philip D. Stern